IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No.  06-cv-01009-WYD-MJW

DAISY HIDALGO,

      Plaintiff,

v.

COMCAST COMPREHENSIVE HEALTH AND WELFARE PLAN, an employee benefit plan,

      Defendant.

---

## ORDER

---

I.    <u>INTRODUCTION</u>

THIS MATTER comes before the Court on two motions:  Defendant's Motion for Judgment on the Administrative Record (docket # 26) and Plaintiff's Motion for Summary Judgment (docket # 28), both filed January 26, 2007.  The motions have been fully briefed.  For the reasons set forth below, Defendant's Motion for Judgment on the Administrative Record is denied, and Plaintiff's Motion for Summary Judgment is granted.

II.    <u>FACTUAL BACKGROUND</u>

Plaintiff brings this action seeking short and long term disability benefits from the Comcast Comprehensive Health and Welfare Plan pursuant to the Employee Retirement Income Security Act ["ERISA"], 29 U.S.C. § 1132(a)(1)(B).  Pursuant to the undisputed facts, Plaintiff was formerly employed by AT&T Broadband as a customer

service representative.  While so employed, she was a participant in the AT&T

Broadband Disability Plan that was administered by UNUM for a period of time.  That

Plan was a 100% employer paid and self-funded disability plan.

On November 18, 2002, a series of transactions occurred that caused the

broadband assets and liabilities of AT&T Corp. to be spun off into an entity named

AT&T Broadband Corp, which, through a merger, became a wholly-owned subsidiary of

AT&T Comcast and was renamed Comcast Corporation.  The AT&T Broadband

Disability Plan was merged into Defendant's Plan effective July 1, 2003 [which will

hereinafter be referred to as "the Plan"].  The Plan engaged the services of Broadspire

to perform certain functions on its behalf, including making decisions on claims that

were covered by the AT&T Broadband Disability Plan prior to its merger into

Defendant's Plan.

Plaintiff has been diagnosed with progressive system sclerosis, joint pain,

hypertension, fibromyalgia, knee pain, obesity, morphia, hypothyrodism, degenerative

joint disease, Reynaud's phenomena, diabetes, carpal tunnel syndrome, and

osteoarthritis.  Her last day of work was June 25, 2003, which is the date of Plaintiff's

onset of disability.

The Plan, through Broadspire, denied Daisy's claim for short term disability

benefits on the grounds that there was a lack of medical evidence to support her claim.

*See* Denial letter dated September 29, 2003 (Administrative Record ["Rec."] 0128),

Denial letter dated August 2, 2005 (Rec. 00371-00372), and Denial Letter dated May 8,

2006 (Rec. 01336-1339).  The denial letter of August 2, 2005, found that while there

was documentation of a long standing history of multiple complaints, "[t]he records received fail to give any objective reason as to why her symptoms are of the severity that she cannot work." (Rec. 00371.)  The letter discusses specific evidence and concludes, "[t]here is a lack of medical evidence (i.e. abnormal exam findings, clinical data to support complications of Diabetes or target organ damage secondary to Hypertension, evidence of thyroid dysfunction, emergency room treatment or hospitalization reports, a comprehensive functional capacities evaluation, a comprehensive musculoskeletal evaluation,  neuropsychological evaluation, etc.) to substantiate why she is unable to perform work in any capacity." (*Id.* 00372.)

The final denial letter of May 8, 2006, also found that "there is a lack of medical evidence (i.e. evidence of joint instability, laboratory testing results, abnormal functional assessment etc.) to substantiate significant impairments in functioning that would have prevented your client from performing her job as a Customer Account Representative, which is sedentary in nature." (Rec. 01339.)  Further, it stated, "All restrictions described by Ms. Hidalgo's treating physicians are within the sedentary nature of her regular job." (*Id.*)

The Plan provides that a claimant must receive short term disability benefits in order to qualify for long term disability benefits.  Following submission of her claim for long term disability benefits and appeals arising from the same, the Plan denied Daisy's claim for long term disability benefits by letter dated July 7, 2006.  (Rec. 02233-02235.) The denial was based on the following grounds: (1) "the Appeals Council determined that there is a lack of objective clinical findings that prevented Ms. Hidalgo from

performing the duties of her job or any other job"; and (2) "since the medical evidence also did not substantiate Ms. Hidalgo's disability retroactive to her initial absence from work, which was 6/23/03, we have determined that she failed to satisfy the benefit qualifying period of her Plan, and thus would be ineligible for LTD benefits." (*Id.* 02234.) The letter also indicates that the claim file was reviewed "by independent physician reviewers specializing in Internal Medicine and Neurology" and that Plaintiff "has exhausted all mandatory appeal procedures under her Plan." (*Id.*)

The Summary Plan Description for the Plan ("SPD") defines "Short-term Disability" as follows:

> A non-work related illness or injury, supported by Objective Clinical Findings, that prevents you from performing the normal duties of your regular job or any other job, with or without modifications.

(Rec. 00054.) The SPD defines "Long-Term Disability" as follows:

> A non-work related illness or injury, supported by Objective Clinical Findings, that prevents you from working at a job (with or without modifications) that pays you at least 60% of your pre-disability Eligible Base Pay and for which you are either qualified or may reasonably become qualified based on training, education or experience.

(*Id.*) The SPD defines "Objective Clinical Findings" as "Observable and measurable findings of symptoms, such as x-ray reports, office visit notes, blood pressure readings, lab test results, etc." (*Id.*)

The Plan grants AT&T Corporation or its delegate with the discretionary authority and exclusive right to interpret the Plan and to decide any matters arising in connection with the administration and operation of the Plan. (Rec. 00009.) The Plan delegated its discretionary authority to Broadspire (formerly known as Kemper).

(Service Agreement, Admin. Rec. 00074, ¶ V.)  The Plan is self-funded, and Broadspire does not use its asserts to pay the claims.  (Rec. 00070.)

Broadspire was paid a fee based on the number of participants and the particular duties it needed to perform on individual claims.  (Rec. 00065, 00091-00098.) The Plan agreement does not provide Broadspire any financial incentive to either grant or deny claims.  Instead, the Plan states, "Kemper and Client acknowledge that any fees paid by Client to Kemper shall not be contingent upon the savings obtained in the adjustment, settlement, or payment of losses."  (*Id.* 00070.)  However, Broadspire is compensated for "Peer Reviews", including compensation at the rate of $275.00 per hour if the medical records review is 20 or more pages or the physician reviewer produces a comprehensive report.  (*Id.* 00092, 00098.)

Of the peer reviews requested by Broadspire as part of its review of Plaintiff's claim for short term disability benefits, only one record review, that of Dr. Howard Futerman (Rec. 00369-00370), was performed by a doctor not affiliated with Broadspire.  Plaintiff contends that Dr. Futerman was not provided with Plaintiff's claim for short term disability benefits or complete copies of her medical records.

III.     ANALYSIS

    A.     Standard of Review

    Plaintiff does not dispute that the Plan grants AT&T Corporation or its delegate with the discretionary authority and exclusive right to interpret the Plan and to decide any matters arising in connection with the administration and operation of the Plan. Further, it is undisputed that the Plan delegated its discretionary authority to

Broadspire.  Where a plan grants discretion to a plan administrator, the arbitrary and capricious standard of review generally applies.  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

Review under the arbitrary and capricious standard "is limited to 'determining whether the . . . interpretation [of the plan] was reasonable and made in good faith.'" *Cameron v. American Elec. Power Serv. Corp.*, No. 06-5191, 2007 WL 2575513, at *3 (10th Cir. 2007) (quoting *Fought v. UNUM Life Ins. Co*, 379 F.3d 997, 1003 (10th Cir. 2004)).  "[W]hen reviewing a plan administrator's decision to deny benefits, the court is to consider "only the rationale asserted by the plan administrator in the administration record and determine whether the decision, based on the asserted rationale was arbitrary and capricious."  *Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.*, 491 F.3d 1180, 1190 (10th Cir. 2007).

 A decision is not arbitrary and capricious if it is supported by substantial evidence.  *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 382 (10th Cir. 1993).  "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decisionmaker.  *Id*.  Review is limited to the administrative record and the facts before the administrator at the time of their decision.  *Flinders*, 491 F.3d at 1190.

Plaintiff contends, however, that a conflict of interest applies.  Where there is such a conflict, a "sliding scale" approach is applied.  *Fought*, 379 F.3d at 1004.  While the arbitrary and capricious standard still applies, the reviewing court "'must decrease the level of deference given to the conflicted administrator's decision in proportion to

the seriousness of the conflict.'" *Id.* (quoting *Chambers v. Family Health Plan* Corp., 100 F.3d 818, 825 (10th Cir. 1996)).  The plaintiff is required to prove the existence of the conflict.  *Fought*, 379 F.3d at 1005.  In deciding whether a conflict of interest exists, the court "'should consider various factors including (1) whether the plan is self-funded, (2) the company funding the plan appointed and compensated the plan administrator, (3) the plan administrator's performance reviews or level of compensation were linked to the denial of benefits; and (4) the provision of benefits had a significant economic impact on the company administering the plan.'"  *Id.* (quotation omitted).

In the case at hand, Plaintiff argues that there is not only a standard conflict of interest, but that an additional reduction in deference is appropriate because serious procedural irregularities exist.  When there is a standard conflict of interest, "'[e]vidence of a conflict . . . requires proof that the plan administrator's dual role jeopardized his impartiality.'"  *Fought,* 379 F.3d at 1005 (quotation and internal quotation marks omitted).  A conflict can arise "between a plan administrator's duty to act 'solely in the interest of the participants and beneficiaries' of the plan, 29 U.S.C. § 1104(a)(1), and his self interest or loyalty to his employer."  *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1097 (10th Cir. 1999).  "If the plaintiff cannot establish a serious conflict of interest, [the court] consider[s] defendant's standard conflict of interest as one factor in determining whether the defendant's denial of disability benefits to plaintiff was arbitrary and capricious."  *Fought*, 379 F.3d at 1005.

However, "[w]hen the plan administrator operates under either (1) an inherent conflict of interest [where the insurer and plan administrator are the same]. . . ; (2) a

proven conflict of interest; or (3) when a serious procedural irregularity exists, and the plan administrator has denied coverage. . ., an additional reduction in deference is appropriate. *Fought*, 379 F.3d at 1006. "Under this less deferential standard, the plan administrator bears the burden of proving the reasonableness of its decision." *Id*. The court "must take a hard look at the evidence and arguments presented to the plan administrator to ensure that the decision was a reasoned application of the terms of the plan to the particular case, untainted by the conflict of interest." *Id*.

I first address whether a standard conflict of interest exists. I find that the first two factors to be considered in determining whether a conflict of interest exists weigh in favor of finding a conflict. First, it is undisputed that the Plan is self-funded. Second, Comcast, the company funding the Plan, appointed and compensated Broadspire, the company to whom Comcast delegated discretionary authority.

I reject Plaintiff's argument, however, that Broadspire's level of compensation is linked to a denial of benefits. Plaintiff has presented no evidence of a direct link between compensation and a denial of benefits. Instead, she argues that this link is supported by the fact that Broadspire receives a fee if a peer review is generated, and that such a review occurs only when there is a denial of the claims. However, there is no evidence that the initial fee that Broadspire receives for claim administration is linked in any way to a denial of a claim. The fact that Broadband receives additional fees if peer review is involved would seem to be tied to additional costs that Broadband incurs on a claim, not simply to the denial of fees. Accordingly, I find that Plaintiff has not shown that this factor is present in this case.

I also reject Plaintiff's argument that the provision of benefits had a significant economic impact on Broadspire. The Plan's funds, not those of Broadspire, pays all benefits. The fact that Broadspire has allegedly touted "that its practice of 'closing claims faster' results in savings for its client" ( Pl.'s Br. in Supp. of Mot. for Summ. J. at 13) does not alter this conclusion. *See Finley v. Hewlett-Packard Co. Employee Benefits Org. Income Protection Plan*, 379 F.3d 1168, 1176 (10th Cir. 2004) ("[w]hile VPA advertises its ability to save insurers money, it does not elaborate on how these savings would occur . . . . They could occur in many ways, including through decreased administrative costs and the prevention of insurance fraud. . . . The fact that an independent third-party plan administrator might save an insurer money, absent more, does not establish a conflict. . . .).[1]

Further, I find that Plaintiff has not shown that a conflict arose between Broadspire's "duty to act 'solely in the interest of the participants and beneficiaries' of the plan and his self interest or loyalty to his employer". *Finley*, 379 F.3d at 1005 (quotation omitted). I first note that Broadspire is not an employee of Comcast but is an independently retained plan administrator. Thus, this type of conflict analysis would

---

[1]  Plaintiff also asserts that while the denial of benefits in her case alone does not significantly impact Broadspire or Comcast, the cumulative effect of denying claims saves a large employer like Comcast money and results in significant profits to Broadspire as it can use its money-saving statistics to entice large employees. I find that this also does not establish a conflict. Plaintiff presents no evidence that Broadspire intended to save its customers money by increasing the number of denied claims. Further, Broadspire is not expected to work for free, and obviously is in business to make a profit. As the Tenth Circuit noted, "[w]hile common sense dictates that an insurer is more likely to retain a plan administrator if it reduces the number of approved claims, we find this general motivation, without more, is insufficient to rise to the level of a legally cognizable interest." *Finley*, 379 F.3d at 1176 (citing *Pitman v. Blue Cross and Blue Shield of Okla.*, 217 F.3d 1291, 1296 (10th Cir. 2000) (finding that an economic interest in the denial of benefits by a plan administrator rises to the level of a legally cognizable conflict of interest only if the "provision of benefits had a *significant* economic impact on the company administering the plan.").

not appear to apply.  Second, even if this conflict analysis is applicable, I find that

Plaintiff has not presented any evidence that Broadspire's duty to act in the interests of

the beneficiaries was compromised by any self interest or loyalty to Comcast, other

than  speculation and innuendo on the part of Plaintiff.

In conclusion as to the relevant factors, while Plaintiff has established the first

two factors, the third and fourth factors have not been established.  I also find that

Plaintiff has not established a standard conflict through showing either dual roles of the

plan administrator or that Broadspire's duty to act in the interests of the beneficiaries

was compromised by any loyalty to Comcast.  Accordingly, I find under the facts of this

case that a conflict of interest has not been established.  *See Finley*, 379 F.3d at 1175

(finding no cognizable conflict of interest where only the first two factors were

established); *Kimber*, 196 F.3d at 1098 (same).

I also reject Plaintiff's argument that serious procedural irregularities result in a

conflict of interest that warrants decreased deference.  In support of this argument

Plaintiff argues that:  (1) incomplete medical and other documents were given the only

"independent" reviewer, Dr. Futerman, and that Dr. Futerman's negative review was

provided to Broadspire's affiliated reviewers to review in issuing their decision; (2)

Broadspire's peer reviewers failed to consider the totality of Plaintiff's condition; and (3)

Broadspire has a pattern of failing to fairly weigh the medical evidence, as indicated by

other court decisions.  I find that these do not rise to the level of a "serious" procedural

irregularity.

As noted by the Eighth Circuit, "the mere presence of a procedural irregularity is not enough to strip a plan administrator of the deferential standard of review." *McGarrah v. Hartford Life Ins. Co.*, 234 F.3d 1026, 1031 (8th Cir. 2000). "[A] claimant must also present evidence that the irregularity raises serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim." *Id.* (citing Restatement (Second) of Trusts § 187 cmt. h).

In the case at hand, the type of procedural irregularities and/or problems with the review of Plaintiff's claim, while potentially troubling, are not in my opinion so serious as to create a conflict. The most troubling is the fact that incomplete medical records were allegedly given the only "independent" reviewer, Dr. Futerman. I first note that this fact is disputed by Defendant. Even assuming this to be true, Defendant points out that it had a new peer review performed by another doctor during Plaintiff's appeal who did not have complete copy of the records. Accordingly, I find that this is not such a serious procedural irregularity so as to create a conflict.

The other alleged irregularities really go to the correctness and validity of the decision. Even assuming they really are procedural irregularities, they do not, in my opinion, rise to the level of serious irregularities sufficient to decrease the level of deference. *See id.*; *Grosvenor v. Qwest Communications Intern.*, No. 05-4061, 2006 WL 2076804, at *4 (10th Cir. 2006) (holding that haste through which Qwest pushed the claim, "together with its evidence lack of interest in investigating the objective medical documentation . . . [and its selective review] of Grosvenor's medical records" were not serious procedural irregularities sufficient to lower the deference); *Fought*,

379 F.3d at 1007 (finding a serious procedural irregularity where there was a lack of an independent review in a complex case and the plan administrator operated under an inherent conflict of interest and resisted discovery on that conflict").[2]

Because I find that no conflict of interest exists, I will review the decision denying Plaintiff's benefits under the arbitrary and capricious standard.  Further, as to Plaintiff's Motion for Summary Judgment, I must consider whether there is a genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[3]

III.   ANALYSIS

Plaintiff contends that summary judgment is proper in her favor because the medical evidence in this case clearly establishes that she is and was disabled under the terms of the Plan.  Defendant asserts that it is entitled to judgment as a matter of law because Plaintiff presents a one sided look at the evidence and seeks to have this Court reweigh that evidence.  The fact that there are differing medical opinions in the record is not sufficient to establish arbitrariness, according to Defendant.  Finally, Defendant contends that while there is evidence of Plaintiff's subjective complaints of

---

[2] *See also McGarrah*, 234 F.3d at 1031 (8th Cir. 2000) (noting as examples of serious procedural irregularities "where the plan trustee does not inquire into the relevant circumstances at issue; where the trustee never offers a written decision, so that the applicant and the court cannot properly review the basis for the decision; or where procedural irregularities are so egregious that the court has a total lack of faith in the integrity of the decision making process. . . . .").

[3] While I acknowledge Defendant's argument that a summary judgment motion may not be the appropriate vehicle in deciding an ERISA case, *see Stevens v. Metropolitan Life Ins. Co.*, Civ. Action No. 05-cv-00563-WYD-MJW (D. Colo. filed October 20, 2006), this has not been definitively decided by the Tenth Circuit.  Thus, I will consider the motion filed by Plaintiff under the summary judgment standard, but note that my decision on the merits ultimately does not turn on any issues of disputed fact.  Thus, the point is largely academic in this case.

pain, such complaints are not sufficient to meet the disability test.  Instead, Plaintiff

must show that her disability is supported by "Objective Clinical Findings" as defined by

the Plan.  Defendant argues that Plaintiff did not show this.

Turning to my analysis, I first note that Defendant asserts that the denial of long

term benefits was proper based on the fact that she did not qualify for short term

benefits.  (Def.'s Memo. Br. in Supp. of Mot. for J. on the Administrative Record at 13.)

Further, Defendant states that "[t]he substantial evidence supporting this conclusion [as

to long term benefits] is the same as discussed in conjunction with the short term

claim".  (*Id.*)  Thus, when addressing the denial of benefits, my analysis applies equally

to both short term and long term benefits.

In my analysis, while I certainly cannot reweigh the evidence to reach a different

conclusion, I still must determine whether the decision was reasonable and supported

by substantial evidence.  This requires that I "look at the record as a whole and

consider 'whatever in the record detracts from its weight.'"  *Schwob v. Standard Ins.*

*Co.*, No. 06-6155, 2007 WL 2562450, at *2 (10th Cir. 2007) (quoting *Caldwell v. Life*

*Ins. Co. of N. Am.*, 287 F.3d 1276, 1282 (10th Cir. 2002)).  Having looked at the record

as a whole, I find that the rationale given by Broadspire to deny benefits is

unreasonable, not supported by substantial evidence, and/or does not appear to be

based on a fair reading of the Plan's definitions for disability.

I first address the reasons provided by Broadspire for denial of benefits which I

find are unreasonable and/or not supported by the record.  The August 2, 2005 denial

letter noted that while there was documentation which indicated a long standing history

of multiple complaints, "[t]he records received fail to give any objective reason as to why her symptoms are of the severity that she cannot work." (Rec. 00371). However, this is not supported by the record.  Plaintiff's treating physician Katherine Morrison, M.D. gave objective reasons why the symptoms were of the severity that she cannot work, as follows:

> This patient suffers from severe osteoarthritis, fibromyalgia, schleroderma and raynauds disease. Because of this her mobility is severely impaired and even her ability to sit for more than 30 minutes is compromised because of pain. Due to intolerance to pain medications this condition is unlikely to change and most likely will get progressively worse.

(Rec. 00108.)

While Defendant argues that Dr. Morrison's opinion was properly rejected because it was based on Plaintiff's subjective complaints, this is simply not true based on the record.  Instead, there are Objective Medical Findings (as defined by the Plan) that substantiate these impairments.  *See e.g.* Rec. 00604 (office notes documenting "diffuse pip joint tenderness" and "left-knee medial and lateral joint line tenderness") 00617 (office notes documenting "multiple paired myofascial tenderpoints"), 00646 (results of bone scan showing osteoarthritic activity involving the knees and degenerative activity in the shoulders, thoracic spine and other areas); 00626 ("body aches).

Further, this argument reflects a misunderstanding of a condition such as fibromyalgia that is not diagnosable through laboratory or clinical tests such as x-rays. Instead, as the Tenth Circuit noted, fibromyalgia is diagnosed entirely on the basis of patients' reports and other symptoms. *Moore v. Barnhart*, No. 03-3253, 2004 WL

2634571, at *8 (10th Cir. 2004). *Moore* further stated, "[t]he most striking and unique finding in [fibromyalgia] is the presence of multiple tender points" *Id*. at *9. In this case, as noted above, there was evidence of multiple tender points as well as a diagnosis of fibromyalgia that appears to be unchallenged. Thus, to the extent that Defendant or Broadspire challenges the findings regarding Plaintiff's fibromyalgia on the basis that there was no objective medical evidence, this is not supported by substantial evidence.[4]     I further note while on the point of fibromyalgia that Broadspire provided reasons why the fibromyalgia was not disabling that reflect a fundamental misunderstanding of this disease. Specifically, Broadspire stated, "[t]here is no description of muscle spasm or diminished motion or strength to a degree of an intensity and/or severity that would preclude her from performing work in any capacity." (Rec. 00372.) The physicians who performed peer reviews also appear to have discounted Plaintiff's fibromyalgia as disabling on the basis that there were no objective tests or clinical signs that confirmed the condition was disabling.[5] However, as the

---

[4]  I also question, without deciding the issue, whether requiring a disability applicant to show objective medical evidence in support of an illness such as fibromyalgia that is defined by the absence of such evidence creates an impossible hurdle for that applicant which in and of itself may be arbitrary and capricious. *See Lemaire v. Hartford Life and Acc. Ins. Co.*, No. 02-2533, 2003 WL 21500334, at *4 (3rd Cir. 2003).

[5]  *See* Rec. at 00394-00395 (peer review of Dr. Spira) (questioning Dr. Morrison's finding that Plaintiff was disabled due to fibromyalgia and other disorders because Plaintiff "was found to have full range of motion . . ." and "normal muscle strength, tone, and bulk" and finding that there was "no objective data to support functional impairment" while ignoring the findings related to trigger point tenderness); Rec. at 00362-00363 (peer review by Dr. Cohan) (noting in part as to fibromyalgia that "there is no description of muscle spasm or diminished of motion, or strength to a degree of intensity and/or severity as to preclude the claimant from performing sedentary or light work" and discounting Dr. Morrison's findings of diffuse tenderness over the lower back and decreased range of motion because "strength , tone, bulk, and deep tendon reflexes are all within normal limits" and because she "does not provide objective documentation or support for that opinion"); Rec. at 00156 (Peer Review of Dr. Weinstein) (discounting fibromyalgia because while Plaintiff "has documented multiple paired myofascial tender points . . . there has been no swelling on joint exam"). Even Dr. Chambers, who

Tenth Circuit explained, "it is the absence of symptoms ordinarily associated with joint and muscle pain that is one of the most striking aspects of this disease." *Moore*, 2004 WL 2634571, at *9.  The Tenth Circuit further noted:

> Patients with FMS [(fibromyalgia) syndrome] usually look healthy.  Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling, although there may be tenderness on palpation.  In addition, muscle strength, sensory functions, and reflexes are normal despite the patient's complaints of acral numbness.

*Id*. (quoting Muhammad B. Yunus, *Fibromyalgia syndrome: blueprint for a reliable diagnosis*, Consultant, June 1996 at 1260).  Thus, the absence of affirmative findings as to these issues (swelling, muscle strength, sensory functions, etc.) cannot support a rejection of the fibromyalgia as disabling.

I also find error with the conclusion in the denial letter of May 8, 2006 that, "All restrictions described by Ms. Hidalgo's treating physicians are within the sedentary nature of her regular job."  (*Id.*)  Again, this conclusion is not supported by the record as the restriction found by Dr. Morrison (that Plaintiff's ability to sit for more than 30 minutes is compromised) is not within the range of sedentary work.  *See Maynard v. Astrue*, No. 06-4134, 2007 WL 495310, at *3 (10th Cir. 2007) ("In order to perform a full range of sedentary work, individual must be able to remain in a seated position for approximately 6 hours out of an 8-hour workday . . . .") (quoting SSR 96-9p, 2006 WL 374185, at *5).  While the plan administrator is not necessarily required to give deference to a treating physician's opinion, it cannot improperly discount, ignore or

examined Plaintiff one time in connection with her claim for social security disability benefits and whose opinion Defendant relies on its motion, appeared to reject fibromyalgia as disabling based, in part, on the fact that there were very "little objective abnormalities" and "minimal if any limitation of motion.  (Rec. 00116.)

mischaracterize the opinion.  *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822,

834 (2003); *Smith v. Reliance Standard Life Ins. Co.*, 322 F. Supp. 2d 1168, 1178

(D. Colo. 2004).

I further note while on this issue that the findings of Dr. Manring who evaluated

Plaintiff for purposes of her social security claim also show that Plaintiff cannot perform

sedentary work.  Dr. Manring among other things found that "body pain limits [Plaintiff]

to lift, carry to 0 pounds" and that Plaintiff is extremely limited in her ability to sit.  (Rec.

00163.)  Defendant argues that Broadspire and its peer review physicians properly

rejected Dr. Manring's assessment because he stated that were no objective findings in

support of his decision.  I disagree.  While Dr. Manring did make this statement, the

definition of "objective evidence" used in the social security context and the definition of

"Objective Clinical Findings" under the Plan are not interchangeable.[6]  This was not

properly considered by the plan administrator and its peer reviewers.

I also agree with Plaintiff that Broadspire appeared to take a  more narrow

interpretation of the requirement that the illness or injury which prevents the applicant

from performing the duties of a job be supported by "Objective Clinical Findings" than is

supported by the Plan.  As noted earlier, the Plan defines "Objective Clinical Findings"

to include "Observable and measurable findings of symptoms, such as x-ray reports,

office visit notes, blood pressure readings, lab test results, etc."  (Rec. 00054.)  While

---

[6] Objective medical evidence under the Social Security Act includes medical signs and laboratory findings, and does not include medical history, opinions or statements about treatment from medical sources.  *See* 20 C.F.R. § 404.1512(b)(1) (citing 20 C.F.R. § 404.1528(b) and (c)).  "Objective Clinical Findings" as defined by the Plan appears to be broader, including "Observable and measurable findings of symptoms, such as . . . office visit notes. . . ."  (*Id.*)

Broadspire's denial letter of August 2, 2005 did reference office visit notes and other evidence which would fall within the definition of "Objective Medical Findings", it applied a narrower definition when finding that the medical evidence did not support Plaintiff's disability (referring only to "abnormal exam findings, clinical data to support complications of Diabetes or target organ damage secondary to Hypertension, evidence of thyroid dysfunction, emergency room treatment or hospitalization reports, a comprehensive functional capacities evaluation, a comprehensive musculoskeletal evaluation,  neuropsychological evaluation, etc.").[7]

While this may not be problematic if it was clear that the physicians who performed the peer reviews upon which the Plan Administrator relied to support its decision applied the broader definition in interpreting the medical records, this does not appear to be the case.  Indeed, the record is replete with reviews of physicians basing their decision on the lack of clinical or laboratory signs to support a diagnosis, particularly in the neurological realm.  *See* Note 3, *supra*.  Again, this is particularly true when it came to Plaintiff's diagnosis of fibromyalgia, as discussed above.

I also find that Broadspire failed to properly evaluate the effect of Plaintiff's pain and fatigue on her ability to work.  While Defendant argues that Plaintiff's complaints of pain were only subjective, this is not supported by the record.  Instead, there are numerous office visits and other medical evidence documenting Plaintiff's pain and its

---

[7]  The same is true of the May 8, 2006 denial letter ("there is a lack of medical evidence (i.e. evidence of joint instability, laboratory testing results, abnormal functional assessment etc.) to substantiate significant impairments in functioning that would have prevented your client from performing her job as a Customer Account Representative, which is sedentary in nature."  (Rec. 01339).

effect on her ability to work.  There are also office notes that document Plaintiff's

fatigue.  (*See, e.g.,* Rec. at 00108, 00604, 00616-00617, 00625-00626, 00629-00630.)

A physician's note which actually objectively diagnoses pain is a specific medical

finding which is not discountable simply because it may be based on the complaints of

the patient.  *See Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004).  Indeed,

the practice of medicine "is necessarily dependent, at least in part, on a patient's

subjective complaints."  *Thomas v. Barnhart*, No. 04-7141, 2005 WL 2114163, at *4

(10th Cir. 2005).  While *Robinson* and *Thomas* are social security cases, I believe that

their reasoning is equally applicable in the ERISA context.[8]  I also note that Broadspire

(when it was known as Kemper) has been criticized in connection with its peer reviews

that did not adequately assess pain.  *See Fleming v. Kemper Nat. Servs., Inc.*, No. 03-

5135, 2005 WL 839639, at *19 (10th Cir. 2005) ("Kemper's experts [including two

experts who performed peer reviews in this case] have focused overly on Fleming's

physical limitations and have given short shrift to the effects on Fleming's pain and her

pain medications . . . .").

Finally, I find that the plan administrator failed to assess the overall functioning

of Plaintiff, with the impairments viewed in combination, when determining whether she

is entitled to benefits.  I find that this also was arbitrary and capricious given the

treating physician's opinion that Plaintiff was disabled as a result of all her impairments,

not just one impairment.  *See Couch v. Continental Cas. Co.*, No. 06-80, 2007 WL

---

[8]  *See also Clausen v. Standard Ins. Co.*, 961 F. Supp. 1446, 1457 (D. Colo. 1997) ("the lack of
'objective' medical evidence to 'prove' Clausen was disabled by her fatigue or pain cannot constitute
substantial evidence that Clause was not disabled, i.e., that she was capable of full-time work").

2736250, at *6-7 (E.D. Ky. 2007); *Smith v. Hartford Life and Acc. Ins. Co.*, No. 05cv287, 2007 WL 1748701, at *15 (S.D. Ohio 2007); *Lawrence v. Motorola, Inc.*, No. 04-1553, 2006 WL 2460921, at *8 (D. Ariz. 2006).

Based on the foregoing analysis, I find that Defendant's Motion for Judgment on the Administrative Record must be denied. Plaintiff's Motion for Summary Judgment is granted. I thus must address the remedy.

"When a plan administrator's decision is overturned as arbitrary and capricious, the court "may either remand the case to the plan administrator for a renewed evaluation of the claimant's case or . . . may order an award of benefits." *Flinders*, 491 F.3d at 1194. "'Which of these two remedies is proper in a given case, however, depends upon the specific flaws in the plan administrator's decision.'" *Id.* (quotation omitted). "If the plan administrator failed to make adequate factual findings or failed to adequately explain the grounds for the decision, then the proper remedy is to remand the case for further findings or additional explanation." *Id.* In this case I find that Broadspire failed to make adequate factual findings and conduct a proper review based on the language of the Plan. Accordingly , I find that a remand to the plan administrator is appropriate.

III.   CONCLUSION

Based upon the foregoing, it is

ORDERED that Defendant's Motion for Judgment on the Administrative Record is **DENIED**. It is

FURTHER ORDERED that Plaintiff's Motion for Summary Judgment is

**GRANTED**.  The Clerk of Court shall thus enter Judgment in favor of Plaintiff and

against Defendant.  It is

FURTHER ORDERED that this case is **REMANDED** to the Plan for further

administrative review as to Plaintiff's claim for short term and long term disability.

Dated:  September 28, 2007

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge